```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FOLEY & LEWIS RACING, INC., <br><br>        Plaintiff, <br><br>     v. <br><br> MARK J. BURLING, <br><br>        Defendant. | HONORABLE JOSEPH E. IRENAS <br><br> CIVIL ACTION NO. 07-972 (JEI) <br><br> **OPINION** |

**APPEARANCES:**

CURETON CAPLAN, PC
By:  Warren S. Wolf
3000 Midlantic Drive, Suite 200
Mt. Laurel, NJ 08054
     Counsel for Plaintiff

MADDEN & MADDEN
By:  John-Paul Madden
     Michael Paul Madden
108 Kings Highway East, Suite 200
P.O. BOX 210
Haddonfield, NJ 08033-0389
     Counsel for Defendant

**IRENAS**, Senior District Judge:

    This lawsuit arises out of Defendant's alleged failure to make payments in accordance with his contract with Plaintiff. Plaintiff commenced the instant action in the Superior Court of New Jersey, alleging breach of contract, detrimental reliance, and fraud.[1]  On March 1, 2007, Defendant removed to federal court

---

[1] It also seeks to compel Defendant to record the transfer of title of a trailer.

1

in the District of New Jersey (Docket # 1).  Presently before the Court is Defendant's Motion to Transfer Venue to the Middle District of Florida.[2]

**I.**

Plaintiff, Foley & Lewis Racing, Inc., is a company in the business of drag racing.  It participates in drag racing events throughout the nation and operates a drag racing school in New Jersey.  (Foley Cert. ¶ 2).  Defendant, Marc J. Burling, is a Florida resident and the owner and Chief Executive Officer ("CEO") of Erie Processing Corporation ("Erie").  In June of 2005, Doug Foley, Plaintiff's President, and Defendant executed an "Associate Sponsorship Commitment" (the "Commitment").[3] (Foley Cert. Ex. A).  The Commitment governs Defendant's rights to use logo display space on Plaintiff's cars to promote Erie or Marc Burling Racing, Defendant's other company.  In exchange, the Commitment obligates Burling to "assist Foley and Lewis Racing, Inc. with a $175,000.00 contribution for the balance of the 2005 IHRA [International Hot Rod Association] racing season."  It

---

[2] This Court has subject matter jurisdiction over the Complaint pursuant to 28 U.S.C. § 1332, as Plaintiff's principal place of business is in New Jersey, Defendant is a resident of Florida, and the amount in controversy exceeds $75,000.00.

[3] Marc Burling signed the Commitment on June 24, 2005.  Doug Foley signed it on June 25, 2005.  The Commitment also contains a space for the signature of Timothy Lewis, the second named individual in Foley & Lewis Racing (Plaintiff).  Lewis, however, never signed the document.

further requires that Burling assist in: (1) marketing Plaintiff's racing team, (2) marketing Plaintiff's sponsor's products and apparel, and (3) promoting Plaintiff's team sponsors.  In exchange, Burling is to receive the title of Vice President of Marketing and to be considered an associate sponsor.[4]

Approximately six months later, in December, 2005, Foley and Burling, in their official capacities as president and CEO of their respective companies, executed an "Associate Sponsorship Agreement" ("the Agreement").  (Foley Cert Ex. B).  The Agreement was "entered into to be effective as of May 1, 2005."  (Id. p.1). It obligates Defendant "to provide financial support to [Plaintiff] in exchange for certain promotional and advertising rights with respect to the Vehicle as a [sic] Associate Sponsor[.]"  (Agreement, p.1).  Specifically, it sets forth Defendant's rights to display logos on Plaintiff's vehicle, and requires Defendant to pay Plaintiff $117,000.00 for the initial term of the Agreement,[5] and up to $100,000.00 for one renewal term in exchange for the "promotional rights."  (Id. ¶ 4).

The Agreement contains a choice of forum clause, which, for

---

[4]  The Commitment also requires Burling to procure $50,000.00 in new sponsorship funds for the National Hot Rod Association ("NHRA") competition for the subsequent three years.  Furthermore, the Commitment contains a provision governing possible future occurrences, including *inter alia,* Burling's responsibilities if he fails to raise the requisite amount of sponsorship money.

[5]  The initial term of the Agreement was May 1, 2005, to December 31, 2005.  (Agreement ¶ 2).

a federal dispute, selects the United States District Court for the Middle District of Florida.[6]  The Commitment contains no such forum selection clause.  The question before the Court is whether the Agreement or the Commitment controls for purposes of this dispute.  For the reasons set forth below, the Court concludes that the Agreement controls, and that the parties are bound by the contractual choice of forum articulated in the Agreement.

## II.

In a diversity case such as this, "the effect to be given a contractual forum selection clause . . . is determined by federal not state law."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995); *see also Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S. 22, 27-32 (1988); *Mathews v. Rescuecom Corp.*, No. 05-4834, 2006 U.S. Dist. LEXIS 8608, *15 (D.N.J. 2006).

A forum selection clause is presumptively valid unless the resisting party can show that enforcement of the clause would be unreasonable under the circumstances.  *M/S Bremen v. Zapata Off-*

---

[6] The forum selection clause reads: "<u>Governing Law</u>.  This agreement shall be governed by and construed in accordance with the laws of the State of Florida (without reference to its principles of conflicts of law).  The state courts of Florida in Pinellas county, Florida shall have exclusive jurisdiction over any judicial proceeding relating to any dispute arising out of the interpretation, performance or breach of this agreement.  Venue for the purposes of any litigation will lie solely in the state courts of Florida in Pinellas County, Florida.  If any dispute arising out of the interpretation, performance or breach of this Agreement is properly subject to the jurisdiction of any federal court, venue for the purposes of any litigation shall lie solely in the United States District Court in and for the Middle District of Florida.  The parties hereby consent to the jurisdiction of the aforesaid federal and state courts located in Florida." (Agreement ¶ 17(g)).

4

*Shore Co.*, 407 U.S. 1, 10 (1972). To show that a forum selection clause is unreasonable and unenforceable, the resisting party must establish: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983); *see also Mathews*, 2006 U.S. Dist. LEXIS 8608, at *16.

Here, Plaintiff does not argue that the forum selection clause is unenforceable because of fraud or public policy. Rather, Plaintiff argues that the forum selection clause simply does not apply to this dispute, and alternatively, even if it does, fairness and convenience factors weigh against transferring this case to Florida.

Plaintiff's suit arises out of Defendant's purported breach of the terms of the Commitment. Plaintiff maintains that the Commitment exists independent of the Agreement, and thus the forum selection clause does not control this dispute. Based upon the plain language of the Commitment and the Agreement, however, it is clear that the Agreement was intended to supercede the Commitment.

Both the Commitment and Agreement govern the associate

sponsorship of Plaintiff's vehicles.[7]  It would belie logic for the parties to execute two contacts for the same purpose, particularly where the second has an effective date that predates the first.  Indeed, if the Commitment and the Agreement were intended to co-exist, Defendant would be obligated to pay two separate amounts - $175,000.00 and $117,000.00 - for what appears to be the identical right to advertise on Plaintiff's vehicles.  "The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties.  It is to be interpreted as a business transaction entered into by practical [people] to accomplish an honest and straightforward end." *Kaufman v. Provident Life & Casualty Ins. Co.*, 828 F. Supp. 275, 283 (D.N.J. 1992) (internal quotations omitted)(modification in original).  Although the terms of Agreement and the Commitment do not overlap completely, the general purpose of both contracts is the same.

   Plaintiff argues that the Commitment contains no forum selection clause because it was solely intended to cover IHRA sanctioned events, which never occur in Florida.  Both the Commitment and the Agreement, however, expressly govern Plaintiff's activities with the IHRA and the NHRA.  (Commitment

---

   [7] As set forth in Exhibit "A" of the Agreement, the associate sponsor is given particular areas on a racecar in which it may advertise.  These areas are distinct from the areas given to the primary sponsor and the sanctioning body.  (Id).

¶¶ 1, 3; Agreement p.1).  *See Kaufman*, 828 F. Supp. at 283 ("To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their 'plain and ordinary meaning.'").

Because the contracts are unambiguous, we have no occasion to look beyond the four corners of the documents.  *See Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999)("In determining whether a contract is ambiguous, the court assumes the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.").  It is apparent from the subject-matter of the documents, as well as the effective dates of each, that the Agreement was intended to supercede the Commitment.[8]

Plaintiff further contends that Defendant lacks standing to enforce the forum selection clause because he did not sign the Agreement in his individual capacity, but rather as CEO of Erie. This argument fails because, "where a third party's conduct is 'closely related to the contractual relationship,' the forum selection clause applies to the third party." *Affiliated Mortg. Prot., LLC v. Tareen*, 2007 U.S. Dist. LEXIS 5106, *11 (D.N.J.

---

[8] Moreover, it is worth noting that it is unclear whether the Commitment is a valid and binding contract because it was never fully executed and the extent that its terms were accepted and acted upon is not known.  *See NLRB v. Int'l Union of Operating Engineers*, 315 F.2d 695, 699 (3d Cir. 1963)("any written contract though signed only by one of the parties binds the other if he accepts it and both act in reliance on it as a valid contract").

2007)(holding that, where a company is party to a contract, its employees who derive benefit from the contract are closely related to the contractual relationship and, thus are bound by the forum selection clause in the contract) (quoting *TAAG Linhas Aereas v. Transam. Air., Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990)).[9]  Because Defendant is the CEO of Erie, signed the agreement in that capacity, and derived benefit from the Agreement, he is closely related to Erie and has standing to enforce the forum selection clause.

Having found that the choice of forum clause applies to this dispute, the Court must next consider the § 1404(a) factors (convenience of parties, convenience of witnesses, or interests of justice),[10] but also the public and private interests affected by the transfer.[11]  *See Jumara v. State Farm Ins. Co.*, 55 F.3d

---

[9] *See also Druckers', Inc. v. Pioneer Elecs. (USA), Inc.*, No. 93-1931, 1993 U.S. Dist. LEXIS 15003, *22-23 (D.N.J. 1993) (holding that closely related non-parties to a contract are bound by the choice of forum clause, and that "[t]o find otherwise, the Court would permit [plaintiffs] to sidestep a valid forum selection clause simply by naming [as a defendant] a closely related party who did not sign the clause") (modification in original) (quotations and citations omitted); *Vickers v. Wells,* 05-930, 2006 U.S. Dist. LEXIS 2692, *10 (N.D. Ga. 2006) (holding that defendant, head of non-defendant corporation, was bound to the employment agreement between plaintiff and corporation).

[10] Neither party challenges the propriety of New Jersey or Florida as potential venues for this dispute.  *See Jumara*, 55 F.3d 873, 878 (3d Cir. 1995)("Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper.").  Both venues are, indeed, proper; Florida is appropriate because it is the state in which Defendant resides and conducts business, and New Jersey is appropriate because Plaintiff is a New Jersey company and the contract that is the subject of the action was signed in New Jersey.  *See* 28 U.S.C. § 1391(c).

[11] Although "there is no definitive formula or list of the factors to consider," *Jumara,* 55 F.3d at 779, the private interest factors generally include: "(1) the convenience and preference of the parties, including the plaintiff's choice of forum; (2) the convenience of witnesses; and (3) access

873, 879 (3d Cir. 1995).

> Within this framework, a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum. . . . Although the parties' agreement as to the most proper forum should not receive dispositive weight, it is entitled to substantial consideration. . . . Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue.

*Jumara*, 55 F.3d at 879-880 (3d Cir. 1995) (internal citations and quotations omitted).

Plaintiff has not satisfied its burden of demonstrating why it should not be bound by its contractual choice of forum.  *See id.*  According to Defendant's unchallenged assertion, Plaintiff's race team travels extensively along the East Coast and participates in several races each year in Florida.  (Burling Aff. ¶ 3).  Although this does not appear to be a very document- or witness-intensive action, a key defense witness, Defendant's former CFO who assisted Defendant with negotiating the Agreement, is located in Florida.  (Burling Aff. ¶ 6).

Plaintiff contends that this Court should retain jurisdiction because it is incorporated and has its principle

---

to books and records."  *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 338 (D.N.J. 2003)(citing *Jumara*, 55 F.3d at 879).  "In addition, the public interest factors that the Court should consider include: (1) practical considerations that would make the trial easy, expeditious, or inexpensive; (2) court congestion in each forum; (3) the location where the events at issue took place and the interest of the respective courts in deciding local controversies; (4) enforceability of any judgment; and (5) the judge's familiarity with the applicable law."  *Id.* (citing *Jumara,* 55 F.3d at 879-80).

place of business in New Jersey.  Additionally, its potential, but unidentified witnesses are located in New Jersey, Canada and upstate New York.  Plaintiff also asserts that both it and New Jersey have an interest in the litigation because the contracts were signed in New Jersey.  These considerations alone, particularly considering the minimal number of witnesses and documents potentially involved in the lawsuit, are insufficient to satisfy Plaintiff's burden of demonstrating that it should not be bound by the forum selection clause in the Agreement.

Accordingly, the Court concludes that the forum selection clause is valid and enforceable.  The Court gives substantial weight to the forum selection clause, *see Jumara*, 55 F.3d at 880, which effectively trumps Plaintiff's choice of the District of New Jersey for this action.

### III.

For the reasons given above, the Court will grant Defendant's motion to transfer venue to the United States District Court for the Middle District of Florida.  The Court will issue an appropriate order.

Date: February 27, 2008

                                        s/*Joseph E. Irenas*
                                        JOSEPH E. IRENAS, S.U.S.D.J.